United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHAT 4 LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ROMAN & WILLIAMS, INC., *et al.*, <br><br> Defendants. <br> _____/ | No. C-12-0784 EMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** <br><br> **(Docket No. 16)** |

Plaintiffs What 4 LLC and 1095 Market Street Holding LLC have filed suit against Defendants Roman & Williams, Inc. ("R&W") and its sole shareholders, Robin Standefer and Stephen Alesch, asserting, among other things, that Defendants misappropriated Plaintiffs' trade secrets and breached the fiduciary duty they owed to Plaintiffs. Currently pending before the Court is Defendants' motion to dismiss in which they challenge some, but not all, of the causes of action asserted in the first amended complaint ("FAC"). Having considered the parties' briefs and the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part Defendants' motion.

## I. FACTUAL & PROCEDURAL BACKGROUND

In the FAC, Plaintiffs allege as follows.

"Plaintiffs are engaged in the development of a premium youth hostel brand, including a planned premium youth hostel at 1095 Market Street, San Francisco." FAC ¶ 21. 1095 Market Street Holding "owns the property and provides the necessary financing." FAC ¶ 21. "What 4 is responsible for design, construction[,] and management of the property and the hostel." FAC ¶ 21.

1    According to Plaintiffs, they have spent "considerable time, effort[,] and money . . . over the
2 past seven years to research and analyze how best and most profitably to offer a high-end hostel
3 experience to travelers," FAC ¶ 22, and their "resulting confidential work product [*e.g.*, conceptual
4 designs, feasibility studies, value engineering, financial planning, etc.] is highly valuable and
5 competitive information." FAC ¶ 25.
6    In October 2010, "Plaintiffs completed the conceptual and schematic designs sufficient to
7 earn and receive all required entitlements and zoning permits" for the hostel in San Francisco. FAC
8 ¶ 33. Thereafter, in November 2010, Plaintiffs contacted R&W about providing architectural and
9 design services for the project. *See* FAC ¶ 34. On November 4, 2010, What 4 and R&W entered
10 into a Nondisclosure Agreement. *See* FAC ¶ 35 & Ex. A (Nondisclosure Agreement). The
11 agreement provided that

> [R&W] wis[h]es to explore a possible Engagement . . . for providing a detailed proposal of Interior Design services on the 1095 Market Street Hotel Project in conjunction with which [What 4] may disclose Confidential Information . . . to [R&W]. [R&W] agrees and undertakes to treat any Confidential Information (as defined [in § 2]) disclosed by [What 4] or its Representatives . . . as confidential in accordance with the terms of this Agreement.

FAC, Ex. A (Nondisclosure Agreement § 1).

The agreement further provided that R&W would use the Confidential Information "solely for the purpose of the Engagement," that R&W would keep the Confidential Information "strictly confidential," and that R&W would not disclose the Confidential Information "in any manner whatsoever." FAC, Ex. A (Nondisclosure Agreement § 3).

Finally, the agreement provided that the parties' commitments "shall survive any termination of the Engagement between the parties, and shall continue for ten years or such shorter period until the Confidential Information is excluded pursuant to Section 2(b) of this Agreement." FAC, Ex. A (Nondisclosure Agreement § 5).

Eventually, 1095 Market Street Holding did hire R&W to work on the youth hostel project. *See* FAC ¶ 36. More specifically, on January 31, 2011, 1095 Market Street Holding and R&W entered into a Letter Agreement. *See* FAC ¶ 36 & Ex. B (Letter Agreement). The agreement indicated that R&W was to perform the following work in six phases:

2

- Phase 1 – Concept Phase
- Phase 2 – Schematic Design
- Phase 3 – Design Development
- Phase 4 – Construction Documentation
- Phase 5 – Bidding and Negotiation
- Phase 6 – Construction Administration

*See* FAC, Ex. B (Letter Agreement at 1). According to Plaintiffs, "[t]he scope of R&W's services required it to act as Plaintiffs' agent in bidding and negotiation with suppliers. R&W was entrusted with the authority to specify and purchase, on Plaintiffs' behalf, [furniture, fixtures, and equipment] for the project." FAC ¶ 36.

The Letter Agreement also indicated that, at some point, the parties would enter into a Definitive Agreement which would finalize certain details and which would eventually supersede the Letter Agreement. However, the parties agreed that they would proceed with the first two phases "without further delay and prior to signing the Definitive Agreement." FAC, Ex. B (Letter Agreement at 1). It appears that no Definitive Agreement was ever signed.

By August 2011, R&W completed the first two phases – *i.e.*, the Concept Phase and the Schematic Design. *See* FAC ¶ 39. Plaintiffs paid R&W more than $200,000 for its work. *See* FAC ¶ 39.

Although the other phases had not yet been completed, R&W began – in October 2011 – to negotiate with a company by the name of Sydell to provide services for a competing premium youth hostel development project. *See* FAC ¶ 40. On November 1, 2011, R&W had a meeting with Sydell "to discuss how [they] would proceed together on Sydell's hostel project, and the scope, timing[,] and content of a contract to be negotiated between [the companies]." FAC ¶ 41. During that meeting, Ms. Standefer "disclosed Plaintiffs' Confidential Information for the selfish purpose of pitching R&W's services on Sydell's project." FAC ¶ 41.

Two weeks later, on November 15, 2011, R&W had a meeting with Plaintiffs "to discuss, among other things, the start of the third phase of the [Letter Agreement]." FAC ¶ 42. At no point during the meeting did R&W disclose that it "had made substantial progress in negotiations to act as

1 lead designer for a directly competing project led by Sydell." FAC ¶ 42. "Even after R&W agreed
2 to a multi-year exclusivity clause with Sydell," R&W never disclosed to Plaintiffs the agreement
3 with Sydell and instead "misled Plaintiffs into believing that work under the [Letter Agreement]
4 would proceed into the third phase of development." FAC ¶ 42.

5       Approximately one week later, on November 23, 2011, Plaintiffs learned about R&W's
6 agreement with Sydell after an article about the agreement was published in the *Wall Street Journal*.
7 *See* FAC ¶ 42. At no point prior to November 23 did Plaintiffs have any reason to believe that
8 R&W would not complete its unfinished work pursuant to the Letter Agreement. *See* FAC ¶ 42.

9       Based on, *inter alia*, the above allegations, Plaintiffs have asserted the following causes of
10 action against each defendant: (1) breach of the nondisclosure agreement, (2) breach of fiduciary
11 duty, (3) concealment, (4) breach of contract, and (5) violation of the California Uniform Trade
12 Secrets Act ("CUTSA"). In the pending motion to dismiss, Defendants challenge each of the claims
13 except for the last claim for statutory trade secret misappropriation.

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to

a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

B. Breach of Contract

Defendants argue first for dismissal of the two claims for breach of contract (*i.e.*, the Nondisclosure Agreement and the Letter Agreement). More specifically, Defendants contend that the claims should be dismissed as to the two individual defendants (Ms. Standefer and Mr. Alesch) because neither was a party to either contract. Plaintiffs concede this point in their opposition. *See* Opp'n at 1 n.1. Accordingly, the Court grants the motion to dismiss the claims for breach of contract as to Ms. Standefer and Mr. Alesch. There are still viable claims for breach of contract as against R&W.

C. Breach of Fiduciary Duty and Concealment

Defendants challenge next the claims for breach of fiduciary duty and concealment. Defendants make two arguments in support of dismissal: (1) the claims are preempted by the CUTSA and (2) the claims are not plausible because there are insufficient allegations that Defendants owed a duty to Plaintiffs.

1. CUTSA Preemption

The CUTSA is codified in California Civil Code § 3426 *et seq.* Section 3426.7(b) provides in relevant part: "This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are *not* based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b). Courts have held that this provision "'expressly allows contractual and criminal remedies, whether or not based on trade secret misappropriation'" but "'implicitly preempts alternative civil remedies based on trade secret misappropriation.'" *K.C. Multimedia, Inc. v. Bank of America Technology & Opers., Inc.*, 171 Cal. App. 4th 939, 954 (2009).

Defendants argue that Plaintiffs' claims for breach of fiduciary duty and concealment are predicated on Defendants' alleged misappropriation of Plaintiffs' trade secrets; therefore, the claims are preempted pursuant to § 3426.7(b). In response, Plaintiffs assert that, at most, their claims are only partially preempted. According to Plaintiffs, there is not complete preemption because they

have not simply alleged misappropriation of trade secrets in conjunction with these claims; rather, they have also alleged breach and concealment because (1) Defendants disclosed Plaintiffs' confidential information that does *not* constitute trade secrets and (2) Defendants failed to disclose R&W's negotiation and eventual agreement to work with Sydell, a direct competitor.[1]

Plaintiffs' first argument is problematic because, in their complaint, Plaintiffs allege that their "Confidential Information . . . constitutes 'trade secrets' within the meaning of the [CUTSA]." FAC ¶ 69. Plaintiffs do not allege – even as an alternative position – that any of the Confidential Information that was disclosed does not rise to the level of a trade secret. Accordingly, the Court agrees with Defendants that, as pled, the claims based on disclosure of the Confidential Information are preempted by the CUTSA. Accordingly, dismissal of these claims is appropriate but without prejudice.

Plaintiffs' second argument, however, has merit. There is CUTSA preemption of a claim only where it is "based on the same nucleus of facts as the misappropriation of trade secrets claim for relief." *K.C. Multimedia*, 171 Cal. App. 4th at 958. Here, even if Defendants did not misappropriate any trade secrets, they still allegedly engaged in wrongful conduct by not telling Plaintiffs about their negotiation and eventual agreement with Sydell. Thus, the claims for breach and concealment based on this particular wrongful conduct are not preempted.

2. Fiduciary Duty

Of course, even if the claims for breach and concealment based on the failure to disclose the Sydell relationship are not preempted, Plaintiffs have no plausible claim for relief if Defendants did not owe a duty to Plaintiffs. *See Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 5294 (2008) (stating that one of the elements of a claim for breach of a fiduciary duty is "the existence of a fiduciary

---

[1] In the FAC, Plaintiffs also indicate that Defendants breached and concealed because they "facilitat[ed], if not wholly enabl[ed], development of a competing chain of hostels." FAC ¶ 53. To the extent Plaintiffs base this theory on Defendants' disclosure of Confidential Information, there is CUTSA preemption as discussed *infra*. To the extent Plaintiffs base this theory on Defendants' eventual work as a designer for Sydell, the alleged agency relationship would have been repudiated by this time, and, after termination of the agency, Defendants "ha[d] no duty not to compete with [Plaintiffs]" or work for a competitor. Rest. (2d) of Agency § 396(a); *see also* Rest. (3d) of Agency § 8.04 (stating that, "[t]hroughout the duration of an agency relationship, an agency has a duty to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors").

duty"); *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007) (stating that one of the elements of a claim for fraud based on concealment is "'the defendant must have been under a duty to disclose the fact to the plaintiff'"); *OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 859 (2007) (noting that "'nondisclosure or concealment may constitute actionable fraud . . . when the defendant is in a fiduciary relationship with the plaintiff"). According to Plaintiffs, Defendants did have a duty to disclose because (1) they were Plaintiffs' architects and (2) they were Plaintiffs' agents.

The Court does not find Plaintiffs' first argument persuasive. While "[a]n architect owes to his client a fiduciary duty of loyalty and good faith," that generally means that an architect "should not 'at the same time be employed by the owner and the builder and receive pay from both, except with the knowledge and consent of the owner.'" *Palmer v. Brown*, 127 Cal. App. 2d 44, 59 (1954). That is not the situation here. Plaintiffs cite no authority establishing the proposition that an architect's fiduciary duty to a client prohibits the architect from working for another client who may in some respects compete in the same field (*e.g.*, real estate development).

As for Plaintiffs' second argument, Defendants contend that there is nothing in the complaint that makes an agency relationship plausible. *See* Reply at 5-6. The Court does not agree. Plaintiffs allege in their complaint that they hired R&W to act as their agent "in [the] bidding and negotiation with suppliers. R&W was entrusted with the authority to specify and purchase, on Plaintiffs' behalf, [furniture, fixtures, and equipment] for the project." FAC ¶ 36. While R&W was not to perform this specific duty until Phase 5 of the Letter Agreement, *see* FAC, Ex. B (Letter Agreement at 1), that does not mean that R&W could not be considered Plaintiffs' agent until that time.

Because there are plausible allegations supporting an agency relationship, the Court turns to the issue of whether there are plausible allegations that R&W violated a duty to its principal, *i.e.*, Plaintiffs. The Court begins by noting that, ordinarily, "an employee or agent who plans to compete with the principal does not have a duty to disclose this fact to the principal." Rest. (3d) of Agency

///

///

///

7

1 § 8.04, comment c[2]; *see also Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 347 (1966) (noting that "[t]here is no requirement that an officer disclose his preparations to compete with the corporation in every case, and failure to disclose such facts will render the officer liable for a breach of his fiduciary duties only where particular circumstances render nondisclosure harmful to the corporation"). Thus, implicitly, an agent who plans to work for a competitor should not have to disclose this fact to the principal either.

While Plaintiffs' broad theory of breach is not supported, Plaintiffs do allege a more specific breach of an agent's duty.

> [A]n agent has a duty not to mislead the principal about the agent's intentions. An agent's silence may mislead the principal when, for example, the agent knows that the principal is about to embark on an expansion in the principal's business in which the agent will play a crucial role that will not easily be replicated once the agent departs.

Rest. (3d) of Agency § 8.04, comment c. In the instant case, Plaintiffs allege that Defendants misled Plaintiffs as to their intentions about performing the Agreement. More specifically, Plaintiffs have alleged that, "[e]ven after R&W agreed to a multi-year exclusivity clause with Sydell," which would bar R&W from completing the Letter Agreement with Plaintiffs, "R&W misled Plaintiffs into believing that work under the [Letter Agreement] would proceed into the third phase of development." FAC ¶ 42. Because of this allegation, the Court concludes that Plaintiffs do have a viable claim for breach and concealment because, as alleged in the complaint, Defendants misled Plaintiffs as to their intentions to perform under the Letter Agreement. The Court, however, expresses, no opinion as to what damages might flow as a result of this conduct by Defendants as the period of alleged concealment was relatively short.

///

///

///

---

[2] Section 8.04 states in part that, during the agency relationship, the "agency may take action, not otherwise wrongful, to prepare for competition following termination of the agency relationship." Rest. (3d) of Agency § 8.04.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. More specifically, the motion is granted with respect to the breach-of-contract claims against the individual defendants. These claims are dismissed with prejudice.

The motion is also granted to the extent the claims for breach of fiduciary duty and concealment are predicated on Defendants' alleged disclosure of Plaintiffs' Confidential Information which, as pled in the complaint, constitutes trade secrets. Dismissal of these claims is without prejudice. Plaintiffs have leave to amend the claims to include, as an alternative theory, allegations that Plaintiffs' Confidential Information did *not* constitute trade secrets. Any amendment must be specific.

Finally, the motion is denied to the extent the claims for breach of fiduciary duty and concealment are predicated on Defendants' misleading of Plaintiffs as to their intentions to perform the Letter Agreement. There is no viable claim for breach of fiduciary duty based on Defendants' working for a competitor or concealing that fact.

This order disposes of Docket No. 16.

IT IS SO ORDERED.

Dated: May 17, 2012

EDWARD M. CHEN
United States District Judge